COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Petty, AtLee and Senior Judge Clements

WILLIAM THOMAS, III

                                         MEMORANDUM OPINION[*]

v.     Record No. 2066-15-3                      PER CURIAM
                                                  MAY 31, 2016

ELIZABETH FAYE OWENS THOMAS

FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
C. Randall Lowe, Judge

(Robert M. Galumbeck; Galumbeck, Dennis & Kegley, on brief), for
appellant.

(David L. Scyphers; Scyphers & Austin, P.C., on brief), for appellee.

William Thomas, III (husband) appeals a final decree of divorce that incorporated the terms

of a premarital agreement. Husband argues that the trial court erred in its interpretation of the

premarital agreement. Upon reviewing the record and briefs of the parties, we conclude that this

appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See

Rule 5A:27.

BACKGROUND

On September 1, 2000, husband and Elizabeth Faye Owens Thomas (wife) entered into a

premarital agreement (the premarital agreement). The premarital agreement included a spousal

support waiver and addressed the parties' property rights.

On September 2, 2000, husband and wife married. On July 15, 2009, the parties

separated. On February 9, 2011, wife filed a complaint for divorce and attached a copy of the

premarital agreement. Husband filed an answer and counterclaim. He challenged the validity of

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the premarital agreement. Wife subsequently filed an amended complaint and again attached the premarital agreement. She asked that the premarital agreement be incorporated into an order. Husband filed an amended answer and counterclaim. He still challenged the validity of the premarital agreement.

On March 24, 2014, the parties appeared before the trial court for a hearing regarding the enforceability of the premarital agreement. On April 3, 2014, the trial court issued a letter opinion, which upheld the validity of the premarital agreement. It found that husband entered into the premarital agreement voluntarily. It noted that husband could read and write and had an opportunity to review the premarital agreement before he signed it. Husband argued that the premarital agreement did "not exclude consideration of equitable distribution." The trial court disagreed and stated, "A cogent reading of the document clearly demonstrates that the parties shall have full access and control of their property, including any profits earned during the marriage, expressly free of claims of the other party." On May 7, 2014, the trial court entered an order incorporating its April 3, 2014 letter opinion. The order states that the parties' premarital agreement is enforceable.

The parties took evidence by deposition and submitted memoranda to the trial court regarding their respective positions. The parties disagreed about the interpretation of the premarital agreement and its impact on equitable distribution. Prior to the marriage, wife owned property that was titled solely in her name. During the marriage, wife sold that property and purchased another piece of property, which also was titled solely in her name. Husband argued that the property acquired during the marriage was marital property because of contributions he made to both properties. Husband asserted that the premarital agreement affected title only and not classification or distribution. He believed that equitable distribution should apply to all of the property. On the other hand, wife argued that the trial court already held that the premarital

agreement was enforceable and that the premarital agreement stated that property titled in a party's sole name was his/her separate property. She further asserted that the premarital agreement provided that any jointly titled marital property should be divided equally.

On June 11, 2015, the trial court issued a letter opinion. The trial court agreed with wife and her interpretation of the premarital agreement. It held that the property titled solely in wife's name was wife's separate property, according to the terms of the premarital agreement. It further found that the jointly titled property should be sold and divided equally between the parties, pursuant to the premarital agreement and Code § 20-107.3. On November 25, 2015, the trial court entered a final decree of divorce, which incorporated the trial court's letter opinions. This appeal followed.

ANALYSIS

Husband argues that the trial court erred in its interpretation of the premarital agreement.[1] He asserts that the premarital agreement specifically includes a waiver of spousal support and inheritance rights, but not a waiver of equitable distribution. Accordingly, husband contends Code § 20-107.3 applies and the trial court should have divided the parties' property, regardless of title, in accordance with the statute.

"On appeal, the Court reviews a trial court's interpretation of a contract *de novo*." Plunkett v. Plunkett, 271 Va. 162, 166-67, 624 S.E.2d 39, 41 (2006) (citing Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002)).

"Antenuptial agreements, like marital property settlements, are contracts subject to the rules of construction applicable to contracts generally, including the application of the plain meaning of unambiguous contractual terms." Pysell v. Keck, 263 Va. 457, 460, 559 S.E.2d 677,

---

[1] Husband does not challenge the validity of the premarital agreement.

678 (2002) (citing <u>Southerland v. Estate of Southerland</u>, 249 Va. 584, 588, 457 S.E.2d 375, 378 (1995)).

"When a contract is clear and unambiguous, it is the court's duty to interpret the contract, as written." <u>Stacy v. Stacy</u>, 53 Va. App. 38, 44, 669 S.E.2d 348, 351 (2008) (en banc) (quoting <u>Palmer & Palmer Co., LLC v. Waterfront Marine Constr., Inc.</u>, 276 Va. 285, 289, 662 S.E.2d 77, 80 (2008)). "According to the rules of construction, 'courts cannot read into contracts language which will add to or take away the meaning of words already contained therein.'" <u>Rutledge v. Rutledge</u>, 45 Va. App. 56, 64, 608 S.E.2d 504, 508 (2005) (quoting <u>Wilson v. Holyfield</u>, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984)). "The contract must be read as a single document. Its meaning is to be gathered from all its associated parts assembled as the unitary expression of the agreement of the parties." <u>Berry v. Klinger</u>, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983).

The premarital agreement included several sections regarding the parties' property. It started by saying, in pertinent part:

> WHEREAS, the parties acknowledge that each has accumulated his and her own separate property and estate, prior to the marriage, which shall forever constitute such persons' own separate estate without claim therein by the other party; and,
>
> WHEREAS, each party has agreed to waive any right, title, interest or claim in or to the properties of the other party, as owned or held by either of them prior to the marriage . . . .

In Section III, the parties agreed that each party "shall separately retain all rights in her [or his] own property, both real and personal, tangible or intangible, whether now owned or hereafter acquired . . . ." The premarital agreement further explained that each party "shall have the full, absolute and unrestricted power and right to lease, manage, sell or dispose of her [or his] own property in any manner, and to receive all moneys, rents, issues and profits therefrom, free from any claim that may be made by" the other party.

- 4 -

In Section V, the parties agreed that "[p]roperty hereafter acquired by the parties hereto shall be owned in that matter specified on the document of title thereto." This section of the premarital agreement further explained that if there was "no document of title, then an agreed memorandum of title between the parties shall determine ownership." Section V also stated that if there was no title or memorandum of title, then there was a "conclusive presumption that such property is owned as co-tenants without regard to the source of funds applied for the purchase thereof, with each party holding a one-half interest in such property."

In Section VI, the premarital agreement states, "Nothing contained herein shall affect the rights of the parties to hereafter acquire jointly held property."

Contrary to husband's arguments, the premarital agreement explains how the parties' property will be divided. If a party owned property prior to the marriage, or if property was titled solely in his/her name, then the property remained that party's separate property. If property was jointly titled, then the property is divided between the parties.

The trial court determined that Section III of the premarital agreement controlled the property titled in wife's name and held that it would remain her sole and separate property, "regardless of any claim made by Mr. Thomas." Section V further supports this ruling because the property was titled solely in wife's name, so according to the terms of the premarital agreement, she would continue to own it. In addition, Section VI states, "nothing contained herein shall effect the rights of the parties to hereafter acquire or convey separate property, without claim or interest therein by the other."

Husband correctly states that the parties did not waive equitable distribution in the premarital agreement. However, the premarital agreement limited the trial court in its application of Code § 20-107.3 because the terms of the premarital agreement provided that property owned before the marriage and property titled solely in one party's name was separate

property.  The trial court considered the factors in Code § 20-107.3 when it divided the parties'

jointly titled marital property.  The trial court discussed each factor in its letter opinion dated

June 11, 2015, prior to dividing the marital property equally.

The terms of the premarital agreement are clear and unambiguous.  The trial court did not

err in its interpretation of the premarital agreement to the division of the parties' property.

Wife asks this Court to award her attorney's fees and costs incurred on appeal.  See

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).  On consideration

of the record before us, we deny her request for an award of attorney's fees and costs she

incurred on appeal.

## CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed.  Rule 5A:27.

Affirmed.